IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY and PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY       Plaintiffs, | :<br>:<br>:<br>:<br>: |
| v. | :     CIVIL ACTION NO. 15-5337 |
| FEDERAL INSURANCE COMPANY       Defendant. | :<br>:<br>:<br>: |

MEMORANDUM OPINION

**RUFE, J.**                                                                                                                                   **AUGUST 31, 2016**

In this action, Plaintiffs Columbia Casualty Company ("Columbia") and Pennsylvania Manufacturers Association Insurance Company ("PMA") have filed a joint motion for judgment on the pleadings against Defendant Federal Insurance Company ("Federal"). Columbia and PMA seek a declaration that, pursuant to an agreement among the insurers, Federal must reimburse them $1 million paid in settlement of a 2009 personal injury case on behalf of Jager Management Company ("Jager"), the common insured. Federal opposes the motion. For the following reasons, the motion will be granted.

**I.       BACKGROUND**

On April, 18, 2009, Pennswood Apartments employee Brian Keifer, driving his personal pick-up truck, struck nine-year-old Mercy Wanjiku. Mercy's parents filed suit against Kiefer, Pennswood Apartments, and Pennswood Apartment's management company, Jager, in the Court of Common Pleas of Montgomery County, Pennsylvania, asserting theories of negligence and vicarious and non-vicarious liability. At the time of the accident, Jager was insured by Columbia, under a general liability policy that contained an automobile exclusion; PMA, under a

commercial business automobile policy; and Federal, under an excess umbrella policy. Both of the primary policies had coverage limits of $1 million.

PMA, the auto liability insurer, agreed to defend Jager in the *Wanjiku* matter, with a reservation of rights in the event that Kiefer was found to be acting outside the scope of his employment. Columbia, by contrast, declined to defend Jager, asserting that an automobile exclusion in its policy barred coverage. Jager consequently filed suit against Columbia in this Court.[1] In an August 18, 2011 opinion, the Honorable Lawrence F. Stengel ruled that Columbia owed Jager a defense obligation because the underlying complaint contained allegations that could bring the claim within Columbia's policy coverage.

During the course of the underlying litigation, Columbia and PMA maintained that coverage could not be available under both primary polices, and that Federal's excess policy was triggered after only one of them paid $1 million. Plaintiffs allege that Federal understood this and that Federal sent a letter to Jager confirming this understanding on April 17, 2014. Nevertheless, Plaintiffs allege that, on or about March 30, 2015, Federal advised Jager that both Columbia and PMA would have to pay $1 million towards the *Wanjiku* settlement before it would contribute under the excess policy. All three insurers, recognizing the uncertainties of litigation and the potential for an excess verdict, entered into a written agreement (the "Agreement") whereby Columbia and PMA both agreed to contribute the limits of their respective policies.[2] All parties agreed to defer their differences as to the coverage issues to a later date and to reserve all their rights against each other. The underlying litigation settled, with both Columbia and PMA paying the policy limits.

---

[1] *Jager Mgmt. Inc., v. Columbia Cas. Co*., No. 11-2372, 2011 WL 3652484, at *1 (E.D. Pa. Aug. 19 2011).

[2] Def's Opp. at Ex. A. (Doc. No. 25-1).

## II.  LEGAL STANDARD

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."[3] The facts presented in the pleadings and the inferences to be drawn are viewed in the light most favorable to the nonmoving party.[4] "Ordinarily, in deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion…if plaintiffs' claims are based on the documents, and matters of public record."[5]

## III.  DISCUSSION

In the Agreement entered into by PMA, Columbia, and Federal, the parties stipulated as to six possible factual outcomes that could arise as a result of a jury trial in the *Wanjiku* case.[6] Under five of the six possible outcomes, all three insurers agreed that there could be coverage under only one of the primary policies or no coverage at all.[7] Under what the parties called Scenario #6, Federal maintains that coverage would be afforded under both primary policies. As set forth in the agreement under this scenario:

> The jury finds Kiefer liable, finds Kiefer was acting in the scope of his employment, and finds Jager Management liable for claims of non-vicarious negligence. Under this scenario, PMA and Columbia contend that the automobile exclusion under Columbia's policy would trigger because Kiefer would be considered an insured and PMA's Auto policy would be the only potentially applicable primary policy. Federal, by contrast, contends that that both PMA's

---

[3] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation omitted).

[4] *Id.*

[5] *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (footnote omitted).

[6] Def's Opp. Mot. J. on Pleadings at Ex. A. (Doc. No. 25-1).

[7] *Id.*

>and Columbia's policies would be triggered and Federal's umbrella policy would not trigger until both policies exhausted their respective limits. ("Scenario #6")[8]

Because this is the only factual scenario under which Federal argues both primary policies must pay, the Court assumes for the purposes of the motion that if the tort case had gone to trial, the jury would have found these facts. Under Scenario #6, there is no dispute as to coverage under PMA's auto policy. The issue, therefore, is whether Columbia's general liability policy, which contains an automobile exclusion, would afford coverage.

>Columbia's general liability policy exempts from coverage:

>"Bodily injury" or "property damage" *arising out* of the ownership, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation Use includes operation and loading or unloading.[9]

Federal asserts that the exclusion is inapplicable because the "arising out of" language in Columbia's policy only applies to Kiefer's negligent driving, and not to Jager's negligence for failing to maintain a safe environment and prevent alcohol consumption. Federal bases its argument on concurrent causation, a theory that treats two negligent acts, even though both were causes of the accident, as separate and independent occurrences for purposes of liability.[10] Under the concurrent causation approach, PMA would pay for the occurrence involving Kiefer's negligence and Columbia would pay for the occurrence relating to Jager's failure to maintain a safe environment.

---

[8] *Id.*

[9] Pl's Mot. J. on Pleadings Ex. 1. (Doc. No. 18-1).

[10] *State Farm Mut. Auto. Ins. Co. v. Partridge*, 514 P.2d 123 (Ca. 1973).

Federal's position lacks merit. Pennsylvania does not currently recognize the concurrent causation theory,[11] and the Pennsylvania Superior Court has explicitly rejected the argument that liability-inducing conduct occurring before the use of a vehicle can be divorced from the negligent driving that led to the accident.[12] Instead, under Pennsylvania law, the focus is on the instrumentality that led to the injury.[13]

In determining how Pennsylvania would resolve the coverage dispute, the Court finds the Pennsylvania Superior Court's *en banc* decision in *Wolfe v. Ross* persuasive.[14] In *Wolfe*, a homeowner served alcohol to a minor at a graduation party, thereby causing the minor to become impaired.[15] The minor then left the party on a dirt bike that was owned by the homeowner's son.[16] Due to his impairment, the minor lost control of the bike, struck a fixed object, and suffered fatal injuries.[17] The issue in the case was whether the negligent act of serving the minor alcohol was covered by the homeowner's policy, which had an automobile exclusion similar to

---

[11] Even if Federal were correct and the concurrent approach was the law in Pennsylvania, there would be no recovery under Columbia's policy because the jurisprudence recognizing that approach also focuses on the instrumentality that caused the accident. A California case, *Farmers Ins. Exchange v. Superior Court* provides guidance. *Farmers Ins. Exchange v. Superior Court*, 163 Cal Rptr.3d 600 Cal. App. Dep't (Super Ct. 2013). In *Farmers*, a toddler left her grandparents' home without the grandmother's knowledge to greet her grandfather. *Id*. at 610. The grandfather drove over the child. *Id*. Consequently, a negligence claim was asserted against the grandfather and a negligent supervision claim was lodged against the grandmother. *Id*. The California Superior Court, after determining that there were two causes of the child's death, affirmed the trial court and ruled that an automobile exclusion in the grandparent's homeowner's policy barred recovery. *Id*. at 620. In so holding, the court surveyed relevant California cases and found that where the excluded instrumentality played an active role in causing the injury and was the only instrumentality of injury, the exclusion applied. *Id*. at 619. But, when the excluded instrumentality did not play an active role in causing the injury, the motor vehicle or other relevant exclusion did not apply. *Id*. Thus, the Court in *Farmer*, finding that the vehicle played an active role in the child's death, barred recovery under the homeowner's policy. *Id*. at 620.

[12] *Wilcha v. Nationwide Mut. Fire Ins. Co.*, 887 A.2d 1254, 1263 (Pa. Super. Ct. 2005).

[13] *Id*. at 1262.

[14] *Wolfe v. Ross*, 115 A.3d 880 (Pa. Super. Ct. 2015).

[15] *Id*. at 882-83.

[16] *Id*. at 883.

[17] *Id*.

5

the one at issue here.[18] The Superior Court held that the exclusion applied because it was the excluded instrumentality—the insured's bike—that caused the minor's death when the bike struck the fixed object.[19] In this case, the child's injuries were caused by being hit with Kiefer's truck, an action that comes squarely within the automobile exclusion.

Federal relies on *Eichelberger v. Warner*, a Pennsylvania Superior Court case that precedes *Wolfe* by over thirty years, as authority that recognizes concurrent causation theory.[20] This Court disagrees that *Eichelberger* applies in this case.  First, the Court in *Wolfe* explicitly rejected the concurrent causation theory, holding instead that the Commonwealth allows insurance companies to contractually limit their liability and impose conditions on their obligations.[21]  Second, *Eichelberger* featured significantly different facts.  In *Eichelberger*, the insured and her passenger stepped out of the insured vehicle to attend to it.[22]  While outside the vehicle the insured stepped into the path of another oncoming vehicle, which struck the insured, thereby causing her death.[23]  Therefore, in that case, the instrumentality that led to the occurrence was the movement of the insured's body stepping into the vehicle's path.[24]  In this case, again, the instrumentality is, even when viewing the facts most favorably to Federal, Kiefer's vehicle striking Mercy Wanjiku.

---

[18] *Id.*

[19] *Id.* at 892.

[20] *Eichelberger v. Warner*, 434 A.3d 747 (Pa. Super. Ct. 1981).

[21] *Wolfe*, 115 A.3d at 893.

[22] *Eichelberger*, 434 A.2d at 748.

[23] *Id.* at 749.

[24] *Id.*

## IV.     CONCLUSION

Because Plaintiffs have demonstrated that no material issue of fact exists as to whether both policies can be liable in the matter, the motion for judgment on the pleadings is granted. An order follows.